J-A28031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DERRICK KILLEBREW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRYSTIAN J. GARDNER | : | No. 1927 EDA 2023 |

Appeal from the Order Entered July 7, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2014-002017

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED JANUARY 3, 2024**

Appellant, Derrick Killebrew ("Father"), appeals from the order granting Appellee, Krystian J. Gardner ("Mother"), shared legal and physical custody of their daughter ("Child"), who was born in 2013.[1]  For the reasons set forth below, we affirm.

Father and Mother were married for a period of less than two years and had separated prior to Child's birth.  On March 6, 2014, Father filed an initial custody complaint seeking shared legal and physical custody.  On April 7,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Neither party has requested that they be identified in the caption by their initials due to the sensitive nature of this custody matter, and therefore we use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b)(1), (2).  We will, however, refer to the minor involved in this dispute as "Child" so as to protect her identity.

2014, the trial court entered an order providing that the parties would share legal custody and Father would have partial physical custody on Tuesday and Thursday evenings and every other Sunday. Father's custody periods were expanded in orders dated October 17, 2014, and January 29, 2015, allowing Father to have Child overnight every other Thursday and one Saturday night per month. Father's partial custody was expanded again on December 9, 2015, to alternating two or four nights per week, and this allocation of custody continued, in substantially similar form, through a series of orders entered prior to 2020.

On January 27, 2020, Mother filed a petition for modification of custody order, alleging that Child was involved in two automobile crashes while being driven by Father's wife ("Stepmother"). At a February 25, 2020 hearing on this petition before a hearing officer, Father presented evidence that Mother had posted sexually explicit photographs of herself on the "OnlyFans" website.[2] Father also informed the hearing officer that he had made a ChildLine report[3] concerning Mother's behavior. On February 26, 2020, the

---

[2] One legal scholar has described OnlyFans as "a subscription-based website that allows content creators to share sexually explicit materials with their fans, after engaging in direct messages and other interactions, for a fee." I. India Thusi, Reality Porn, 96 N.Y.U. L. Rev. 738, 740 (2021).

[3] ChildLine is an organizational unit of the Department of Human Services of the Commonwealth "which operates a Statewide toll-free system for receiving reports of suspected child abuse [], refers the reports for investigation and maintains the reports in the appropriate file." *In the Interest of D.R.*, 216 A.3d 286, 294 n.5 (Pa. Super. 2019) (quoting 55 Pa. Code § 3490.4).

trial court issued an order, upon the recommendation of the hearing officer, providing that Mother would have no contact with Child pending a scheduled forensic interview with Child. Order, 2/26/20. In the event that the forensic interview revealed that Child had no awareness of Mother's OnlyFans activity, the order authorized supervised telephone communication with Mother and Child but no in-person contact pending a future court order. *Id.* Alternatively, if Child did indicate awareness of such activity, then Mother would be permitted no contact with Child at all. *Id.* The order further provided that Mother was required to delete her OnlyFans account and submit to a psychological evaluation and follow any recommendations provided to her in that evaluation. *Id.*

Mother filed a petition for emergency hearing on July 1, 2020, alleging that the Delaware County Children and Youth Services ("CYS") investigation had showed no sign of child abuse or that Child was aware of Mother's OnlyFans activity and that Mother had otherwise fully complied with the requirements of the February 26, 2020 order. This petition was denied on July 22, 2020. On August 20, 2020, Father and Mother appeared at a status conference before the hearing officer, which resulted in an August 25, 2020 order granting Mother partial physical custody of Child every other weekend from Friday to Sunday evening, with Father retaining sole legal custody. On November 16, 2020, Mother filed a modification petition seeking shared legal and physical custody of Child. In a March 30, 2021 order, upon consideration of Mother's request, the trial court extended Mother's period of partial physical

custody to a period spanning Friday evening to Tuesday morning, on alternate weekends, but legal custody of Child continued to reside with Father.

On August 24, 2021, Mother filed the modification petition at issue here, again seeking shared legal and physical custody of Child. The matter ultimately proceeded to trial on April 26, 2023. At trial, Mother, Mother's sister, Father, Stepmother, Child, and Child's maternal half-brother, S.G., testified. On June 27, 2023, the trial court issued the custody order under appeal, which provides that Mother and Father share legal and physical custody of Child. Order, 6/27/23, ¶¶3-4. On that same date, the trial court issued a separate opinion addressing each of the sixteen custody factors set forth in Section 5328(a) of the Child Custody Act, 23 Pa.C.S. § 5328(a).

As relevant here, the court found that factor 6, the child's sibling relationships, was neutral between the parties as Child has positive relationships with her siblings on both sides of her family, her older maternal half-brother, S.G., and two younger half-sisters on Father's side of the family. Trial Court Opinion, 6/27/23, at 24-25; *see* 23 Pa.C.S. § 5328(a)(6). In addition, the court determined that factor 9, which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child, was also neutral. Trial Court Opinion, 6/27/23, at 27-30; *see* 23 Pa.C.S. § 5328(a)(9). Finally, in its consideration of factor 16, any other relevant factor, the court found that there was no evidence that Mother's OnlyFans activity caused Child any harm and that the court was not permitted to otherwise "judge a parent's private adult behavior outside the presence of the child"

- 4 -

under its statutory authority to assess the best interests of the child when fashioning a custody award. Trial Court Opinion, 6/27/23, at 36-39; **see** 23 Pa.C.S. § 5328(a)(16).

Father filed a timely notice of appeal from the trial court's order.[4] Father presents two claims to this Court.[5] First, he argues that the trial court abused its discretion by granting Mother shared legal and physical custody of Child despite Mother's admitted use of the OnlyFans platform. Second, Father contends that the trial court abused its discretion by finding that factor 6 (Child's sibling relationships) and factor 9 (party more likely to maintain

---

[4] Father filed a concise statement of errors complained of on appeal contemporaneously with his notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i). The trial court issued a Pa.R.A.P. 1925(a) opinion responding to Father's claimed errors on August 10, 2023.

[5] The statement of questions involved portion of Father's brief reproduces all eleven errors that Father included in his Rule 1925(b) concise statement. Father's Brief at 4-6; Rule 1925(b) statement, ¶¶1-11. As these issues are duplicative and some are abandoned on appeal, we instead base our analysis on the argument section of Father's brief, which is comprised of two sections, the first focusing on Mother's OnlyFans activity and the second on the trial court's consideration of custody factors 6 and 9. Father's Brief at 12-17; **see also** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued").

To the extent Father argues over the course of a few sentences in his brief that the trial court "held [Father's period of sole legal custody] against" him because of an apparent "refus[al] to permit Mother to exercise her legal rights," Father's Brief at 12-13, we find this claim waived for lack of development and the absence of any citation to which portion of the trial court's opinion Father is challenging, the portions of the record that would support Father's argument, or any relevant law. **See Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014); **In the Interest of D.R.-W.**, 227 A.3d 905, 910-11 (Pa. Super. 2020).

loving, stable, consistent, and nurturing relationship with Child) are neutral when they should have been found to favor Father.[6]

Our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Graves v. Graves*, 265 A.3d 688, 693 (Pa. Super. 2021) (citation omitted).

The paramount concern in any child custody case is the best interests of the child. 23 Pa.C.S. §§ 5328(a), 5338(a); *D.K. v. S.P.K.*, 102 A.3d 467, 474 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citation omitted). When awarding any form of custody, the trial court must set forth its consideration of each of the Section 5328(a) custody factors on the record or in a written opinion or order. 23 Pa.C.S. §§ 5323(d), 5328(a); *Graves*, 265 A.3d at 694,

_____

[6] Mother, who represented herself in the proceedings below, did not file a responsive brief.

- 6 -

700. "In a dispute between parents, each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the child." *Graves*, 265 A.3d at 698 (citation omitted).

Father argues that the trial court did not appropriately consider Mother's "poor life choices" when granting Mother shared legal and physical custody of Child based upon her prior OnlyFans activities. Father's Brief at 13. Father asserts that this activity called into question Mother's mental health and posed a risk to Child. Father further contends that Mother was not forthright at trial regarding her work on OnlyFans as she stated that her OnlyFans subscribers would see her in "various stages of undress," N.T., 4/26/23, at 28, when in fact she was broadcasting herself performing sex acts.

As stated above, the trial court addressed Father's evidence and allegations regarding Mother's OnlyFans activity in the context of custody factor 16, "[a]ny other relevant factor." 23 Pa.C.S. § 5328(a)(16). The court noted Mother's testimony that she deleted her OnlyFans account in May 2020, she has never posted adult content on any other site, her interactions with her patrons on the site were entirely virtual and solely through her pseudonymous username, and she never created OnlyFans content in her home during a period in which Child was present. Trial Court Opinion, 6/27/23, at 36-37; *see* N.T., 4/26/23, at 25-29, 35, 37, Exhibit D-1. The court further observed that the CYS investigation revealed that Father's child abuse report was "unfounded." Trial Court Opinion, 6/27/23, at 37; *see* 23

Pa.C.S. § 6303(a) (defining an "unfounded report" of child abuse); N.T., 4/26/23, at 51-52, Exhibit D-4. While the court recounted that the hearing officer who initially addressed this issue in 2020 agreed with Father that Mother's OnlyFans activity reflected on her ability as a parent, the court recited its obligation to conduct a *de novo* custody trial and determined that it was not bound by the hearing officer's finding. Trial Court Opinion, 6/27/23, at 38 (citing Pa.R.Civ.P. No. 1915.4-3(b)). The trial court added that its focus under Section 5328(a) was on the best interests of the child with weighted consideration of any factor that affects the child's safety, but "none of [the custody] factors include the morality of a parent's judgment or values." *Id.*

The trial court then determined that Mother's OnlyFans activities were irrelevant to the court's custody analysis:

> At the proceedings before the custody hearing officer, Father failed to establish that Mother's activities on OnlyFans caused [C]hild any harm. Indeed, the record before the hearing officer as well as the record of the custody trial failed to establish that [C]hild was aware of Mother's activities on OnlyFans.
>
> Moreover, the [c]ourt credits Mother's testimony that [C]hild was always in Father's custody while she was creat[ing] content for OnlyFans. Father presented no evidence to prove the contrary. Additionally, Father failed to establish that Mother's participation in OnlyFans raised any safety concerns. Indeed, he could not, as Mother participated anonymously with her location shielded. Last, the [c]ourt notes that CYS investigated Father's allegations and subjected [C]hild to a forensic interview. The CYS investigation was closed after it deemed Father's allegations "unfounded."
>
> In sum, the Court has considered Father's concerns regarding Mother's OnlyFans page. The statutory custody factors contained in § 5328(a) fail to permit this Court to judge a parent's private adult behavior outside the presence of the child at issue absent evidence that it implicates [the] child's safety or otherwise is

inimical to the best interests of the child. Father failed to show that Mother's activities three years ago on OnlyFans affect [C]hild's best interests or are detrimental to her safety. Indeed, upon this [c]ourt's Order, Mother deleted the page on May 15, 2020, over three years ago. Accordingly, the [c]ourt declines to consider Father's allegation, finding it stale and beyond the purview of this [c]ourt's statutory obligation pursuant to § 5328(a).

*Id.* at 38-39.

Upon a careful review of the record, we find no abuse of discretion in the trial court's conclusion. The court comprehensively considered the evidence adduced at trial concerning Mother's OnlyFans usage and fully addressed Father's arguments that Mother's past behavior on the site negatively reflected on her ability to parent Child. The court's factual findings that Mother created her OnlyFans content when Child was not present in her house, Child was unaware of Mother's activities on the site, and such activities did not pose a danger to Child's safety are supported by the record. As an appellate court, we may not disturb the trial court's reasonable conclusion, supported by competent evidence, that Mother's OnlyFans activity did not weigh against an award of custody in her favor. ***See Graves***, 265 A.3d at 693 (indicating that this Court will not reject a trial court's reasonable conclusions in custody matters supported by competent evidence); ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) ("Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.") (citation omitted).

Moreover, we agree with the trial court's rejection of Father's request that the court consider Mother's purported moral deficiencies as a result of her OnlyFans usage. As the trial court explained, a parent's morality is not an enumerated custody factor. Trial Court Opinion, 6/27/23, at 38; *see* 23 Pa.C.S. § 5328(a). Furthermore, this Court has repeatedly rejected consideration of a parent's morality or sexual lifestyle when fashioning a custody award. In *V.B. v. J.E.B.*, 55 A.3d 1193 (Pa. Super. 2012), we held that a trial court "injected artificial morality concerns that the legislature has deemed irrelevant" when finding that a father's participation in prior polyamorous relationships weighed against him in a custody ruling where there was no finding that the relationships had an adverse impact on the child. *Id.* at 1201-02; *see also Bolds v. Bowe*, No. 570 EDA 2022, 2022 WL 4372900, at *11-13 (Pa. Super. Sept. 22, 2022) (citing *V.B.* and disapproving of trial court's criticism of father for leading a "double life" of polyamorous relationships but declining to overturn award of primary physical custody to mother where court "based its assessment of the factors upon [f]ather's behavior, not its preconceived notions or judgment against [f]ather's immorality"). Similarly, in *Michael T.L. v. Marilyn J.L.*, 525 A.2d 414 (Pa. Super. 1987), we held that the trial court committed a "gross abuse of discretion" in relying on the mother's "active sex life" during periods when the child was not in her custody as a basis for awarding custody of the child to the father absent evidence that the mother's promiscuity had an adverse impact on the child. *Id.* at 418-20. Likewise, here, where the trial court found that

Mother's past usage of OnlyFans to earn supplemental income[7] was not a detriment to her parenting of Child or to Child's safety, the court properly declined to consider this issue.

In his second issue, Father argues that the trial court "misallocated" factors 6 and 9 of the Section 5328(a) factors as neutral when they in fact favor Father. Father's Brief at 16. With respect to factor 6, "[t]he child's sibling relationships," 23 Pa.C.S. § 5328(a)(6), Father asserts that Child has an excellent relationship with her two younger half-sisters on Father's side, whereas S.G., Child's maternal half-brother who has been diagnosed with autism spectrum disorder, only recently returned to Mother's home after being sent to live with Mother's parents in Virginia for four years. N.T., 4/26/23, at 122-24. Father notes his testimony regarding an incident, five years prior, when S.G. was babysitting Child and became upset about her crying, slammed her head into a table causing Child a black eye, and then S.G. fled the house leaving the door open. *Id.* at 268-69.

Factor 9 requires the court's consideration of "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." 23 Pa.C.S. § 5328(a)(9). Father argues that the evidence showed that his "two-parent household with siblings close in age" to Child provided a more loving, stable, consistent, and

---

[7] Mother testified that she is a licensed therapist and was employed in that capacity throughout the relevant period. N.T., 4/26/23, at 29-30.

nurturing environment. Father's Brief at 17. Father also cites his testimony that Child was engaged in extra-curricular activities while staying with him, such as dance and choir, while Mother did not indicate any involvement in community activities upon questioning by the trial court. N.T., 4/26/23, at 66, 237.

Father is not entitled to relief on his second issue. First, we note that the trial court considered Father's allegation that S.G. "lashed out violently at" Child, causing her injuries, but the court credited Mother and S.G., each of whom flatly denied at trial that this incident ever occurred. Trial Court Opinion, 6/27/23, at 25; *see* N.T., 4/26/23, at 72-73, 124-25, 128, 175, 185-87, 268-69. The court's credibility finding, which is supported by the record, is conclusive on appeal. *Graves*, 265 A.3d at 693. Furthermore, the court's finding that Child has a positive, enriching relationship with S.G. is supported by S.G. and Child's testimony. N.T., 4/26/23, at 174-76, 345-46, 350. Therefore, we see no basis to upset the court's finding with the respect to factor 6.

With respect to factor 9, to the extent Father argues that his "two-parent household" provides a superior environment for Child, Father's Brief at 17, this Court has held that "[t]here is no presumption in our child custody law favoring two parent families" and that a parent's marital status, standing alone, is not a valid custody consideration. *M.E.V. v. F.P.W.*, 100 A.3d 670, 679-80 (Pa. Super. 2014); *Jordan v. Jordan*, 448 A.2d 1113, 1117 (Pa. Super. 1982). The trial court engaged in a thorough review of the testimony

concerning the parties' relationships with Child, including concerns raised by both parties regarding whether the other party over- or under-disciplined Child, Mother's limited ability to parent Child since Mother's custody was curtailed in early 2020, and Mother's concerns that Father was impeding her calls with Child during non-custodial periods. Trial Court Opinion, 6/27/23, at 27-30. The court further noted Child's testimony that she enjoys her time and feels safe in both Mother's and Father's homes. *Id.* at 30; N.T., 4/26/23, at 352. We find no abuse of discretion in the trial court's weighing of this evidence and coming to the conclusion that both parents maintain a loving, stable, consistent, and nurturing relationship with Child. Trial Court Opinion, 6/27/23, at 30; *see A.V.*, 87 A.3d at 820 (stating that the trial court alone determines the weight to be placed on the evidence).

As we find that Father is not entitled to relief on either of his claims, we affirm the trial court's June 27, 2023 order providing for shared legal and physical custody of Child.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  1/03/2024

- 13 -